IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v -                                                                       14-CR-175-A

PHILIP ZODHIATES,

                              Defendant.

# GOVERNMENT'S RESPONSE TO
# DEFENSE MEMORANDUM ON CONSPIRACY

**THE UNITED STATES OF AMERICA**, by its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, and Paul J. Van de Graaf, Special Assistant United States Attorney, of counsel, hereby responds to the defense pre-trial memorandum submitted on Saturday September 17, 2016.

In a brief defense memorandum, Zodhiates makes three different arguments. First, he renews his assertion that, because Janet Jenkins's existing parental rights in September 2009 were rights to parent-child contact, the only conspiracy the indictment alleges is a conspiracy to obstruct visitation rights. Second, he contends that a conspiracy with multiple objects is duplicitous. Third, he argues that evidence about co-conspirator actions between September 25, 2009, and November 20, 2009, should be excluded as irrelevant. The Court should reject all three arguments.

1. <u>Existing Parental Rights and the Retention Prong of the Conspiracy Charge</u>

The government has already responded to the defense position that the only parental rights at issue for the alleged conspiracy, which spanned over five years, are the parental rights at the time the conspiracy started. The indictment here alleges a conspiracy with two objects, the two prongs of the international parental kidnapping statute: removing Isabella from the United States and retaining Isabella outside the United States. Obviously, the object of removal was accomplished at a particular time in September 2009 (when Janet Jenkins had visitation rights), but the object of retention occurred over five years (when Janet Jenkins' parental rights changed).

It has always been the government's theory that the alleged illegal agreement to retain Isabella included intent to obstruct all of Janet Jenkins' parental rights. The defense tries to suggest that the government only came forward with this approach at the pre-trial conference. To the contrary, it was articulated in the government's pretrial memorandum submitted weeks ago. The indictment alleges an agreement to obstruct whatever parental rights Janet Jenkins can exercise at the time of the execution of the objects of the conspiracy. Indeed, in this case, the government's evidence will show that Zodhiates and Lisa Miller understood when the removal took place that Judge Cohen in Vermont would transfer legal and physical custody of Isabella to Janet after Lisa disappeared. Thus, the indictment properly alleges that, from the beginning, the agreement contemplated that Lisa Miller would retain Isabella outside the country to obstruct the exercise of any and all of Janet Jenkins' parental rights, including those rights after Judge Cohen transferred custody.

The defense position relies on the erroneous presumption that 18 U.S.C. § 371 does not criminalize a conspiracy to commit a crime in the future. The conspiracy statute does reach such agreements, as the cases in our prior submission show. Moreover, it is common for a conspiracy to include multiple unlawful events, such separate bank robberies, one of which takes place soon after the agreement is formed and another that takes place months away. Here, the conspiracy count alleges two objects, one of which took place early in the conspiracy and the other continuing over a long period of time.

Zodhiates cites the dates of the overt acts as relevant to his claim. The government need only prove one overt act in furtherance of the conspiracy. The dates of the overt acts have no bearing on defining the scope of the conspiracy. Here, the alleged overt acts focus exclusively on acts occurring in the Western District of New York, thus supporting venue here.

2. Duplicity

The defense again misstates the law when it claims that a conspiracy alleging two unlawful objects runs afoul of the rule against duplicity. Authority from both the Second Circuit and this Court make clear that a conspiracy count is not duplicitous merely because it alleges the commission of a crime by several means. Duplicity requires charging several different offenses in the same count—however, in this Circuit, the conspiracy itself is the crime, and it is only one crime, regardless of how diverse the objects of the conspiracy.

The seminal and oft-cited case is United States v. Aracri, 968 F.2d 1512 (2d Cir. 1992). The defendant's brief cites to Aracri, but it does not actually discuss and apply the central holding in Aracri. Notably, the holding in the main case cited by the defense supports the government, not the defense—the Second Circuit rejected the defense's duplicity arguments in that case. In its motion, the defense fails to even attempt at distinguishing the central holding of Aracri.

As the Second Circuit held in Aracri, "An indictment is duplicitous if it joins two or more distinct crimes in a single count. A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from the allegation in a single count of the commission of a crime by several means. The latter is not duplicitous." Id. at 1518 (internal citations and quotations omitted) (emphasis added). Citing to long-established principles, the Second Circuit went on to state, "In this Circuit 'it is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects.'" Id. (quoting United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)).

That is precisely the case here. In this case, the conspiracy count is not charging two separate crimes that raise duplicity concerns by making it unclear what crime the defendant might have committed. As noted above, the indictment charges a single conspiracy to violate both prongs of the international parental kidnapping statute.

The defense position has also been rejected on more than one occasion by this Court. United States v. Baker, 2009 WL 6594329 (W.D.N.Y. Dec. 11, 2009) (denying defense request to dismiss conspiracy count on duplicitous grounds) (report and recommendation adopted, No. 07-CR-126A, 2010 WL 2465533 (W.D.N.Y. June 14, 2010). In Baker, the court cited to Aracri and its progeny and held that "where, as here, a conspiracy to commit several crimes is alleged in a single count of conspiracy, that count is not duplicitous." Id. at *2 (emphasis added); see also United States v. Pike, No. 01-CR-129A, 2006 WL 146061, at *1 (W.D.N.Y. Jan. 19, 2006) ("It is well established that a conspiracy may have several objects, without being duplicitous.").

Zodhiates also urges the Court to instruct the jury consistent with its proposed instructions on pages 70-71. The government objects to the defense's proposed instructions, but it agrees that the Court should craft an instruction that addresses its ruling on existing rights. The government proposes that the Court amend the instruction it discussed with regard to the removal allegation in its ruling on September 14, replacing "In this case, the term 'parental rights' means Janet Jenkins' right to visit IMJ, as that right was defined by the law and courts of Vermont at the time IMJ was removed from the United States," with the following: "With regard to the removal prong of Count One and the removal charge in Count Two 'parental rights' means Janet Jenkins' right to visit IMJ, as that right was defined by the law and court of Vermont at the time IMJ was removed from the United States. With regard to the retention prong of Count Two, which alleges retention of IMJ over several years, 'parental rights' means both Janet Jenkins' right to visit IMJ, as that right was defined by the law and courts of Vermont, before November 20, 2009, and Janet Jenkins' right to legal and

5

physical custody of IMJ, as that right was defined by the law and courts of Vermont, after November 20, 2009."

### 3. Relevance of Conspiratorial Acts Between September 25 and November 20

Zodhiates suggests that evidence showing the existence of the conspiracy during the time period of the alleged conspiracy is irrelevant to the conspiracy. This position misses the mark for at least two reasons. First, the defense position relies on an overly cramped view of Janet Jenkins' visitation rights. In September and October 2009, Janet Jenkins had existing parental rights, the right to parent-child contact. That right was not strictly limited to the time period of the September court-ordered visit. Janet Jenkins' visitation rights did not end because the Vermont court had not ordered a follow-up visit. A conspiracy to retain Isabella outside the United States to obstruct future but as yet not scheduled visits would still be a crime. But in any event, the defense is also mistaken about the status of Judge Cohen's orders. In his 2007 "final order" he ordered future visits on holidays without limitation. Thus, Janet was entitled under the court's orders to a visit during the holidays in 2009.

Second, the argument again relies on the mistaken idea (discussed further above), that a conspiracy cannot have as its object a future criminal event. The defense posits that "the delivery of items on November 15, 2009 to Nicaragua could not relate to the obstruction of existing parental rights because the transfer did not take place until November 20, 2009." To the contrary, conspirators can engage in conduct relevant to a conspiracy in advance of the illegal acts contemplated by the agreement. Using the bank robbery example again, the preparation for a bank heist by the conspirators would be relevant evidence of the conspiracy

even though the heist did not take place until weeks later. Even if the defense is correct about the scope of Janet Jenkins' visitation rights between September 27 and November 20, the conspirators were helping Lisa Miller in preparation for Lisa Miller retaining Isabella outside the country after November 20. Evidence of such help should be relevant to the conspiracy.

DATED:    Buffalo, New York, September 19, 2016.

WILLIAM J. HOCHUL, JR.
United States Attorney


BY:    /s/ PAUL J. VAN DE GRAAF
       PAUL J. VAN DE GRAAF
       Special Assistant U.S. Attorney
       MICHAEL DIGIACOMO
       Assistant U.S. Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       paul.van.de.graaf@usdoj.gov