**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.                                            14-CR-175-RJA
                                                        **DECISION AND ORDER**

PHILIP ZODHIATES,

        Defendant.
_____

      This case is here on an issue on which the Court previously reserved decision: whether the Government may argue that Defendant Philip Zodhiates conspired to obstruct a not-yet-existing court order.  *See* Docket No. 102, *United States v. Zodhiates*, 2016 WL 4771007, at *5 n.2 (W.D.N.Y. Sept. 14, 2016).  As noted in the Court's most recent Decision and Order, the Government alleges that the conspiracy in this case had two unlawful objects: (1) to *remove* a child, IMJ, from the United States at the time Janet Jenkins had visitation rights to IMJ, and (2) to *retain* IMJ outside the United States after a Vermont family court granted Jenkins sole physical and legal custody of IMJ.  *See* Docket No. 86 at 19.  *See also* Docket No. 41 (Superseding Indictment) at 1 (alleging that Zodhiates and others conspired "to commit an offense against the United States, that is, to *remove* a child, J1, from the United States and to *retain* that child, who had been in the United States, outside the United States") (emphases added).[1]

---

[1] The superseding indictment charges these unlawful objects in the conjunctive.  It is well settled, however, that the jury may be charged in the disjunctive.  *See United States v. Thomas*, 54 F.3d 73, 81 (2d Cir. 1995).  *Cf. United States v. McDonough*, 56 F.3d 381, 390 (2d Cir. 1995) ("Where there are several ways to violate a criminal statute, . . . federal pleading requires that an indictment charge in the conjunctive to inform the accused fully of the charges.  A conviction under such a statute will be sustained if the evidence indicates that the statute was violated in any of the ways charged.") (citations, quotations, brackets, and ellipsis omitted).

The question the Court must resolve is whether the Government may argue that Zodhiates and others conspired to retain IMJ outside the United States with the intent of obstructing a custody order that was anticipated, but which did not exist at the time the conspiracy was allegedly formed. In other words, may the Government argue that one of the conspiracy's objects was an act whose illegality was contingent on a future event occurring—that is, Jenkins receiving custody of IMJ?

To support its argument, the Government relies primarily on a dated Second Circuit decision, *Radin v. United States*, 189 F. 568 (2d Cir. 1911). In that case, the Second Circuit endorsed the holding of an English case in which the "[t]he object of the conspiracy was not possible of attainment when the conspiracy was entered into" but, instead, "depend[ed] upon a contingent future event. If that event happened the crime might be committed, otherwise not." *Id.* at 574 (citing *Reg v. Banks*, 12 Cox, C.C. 393). The court held it was irrelevant that the conspiracy's object was contingent on an uncertain future event: "[A]s the defendants conspired to commit a crime which might be possible in the near future though impossible at the time of the conspiracy, . . . they could be punished not for [the crime that was the object of the conspiracy] but for the conspiracy to commit [that crime]." *Id.*

Other than *Radin*, the parties cite no cases on point. *Radin*'s holding, however, is consistent with well settled conspiracy law. The issue raised by the Government's retention theory of the conspiracy charge is really a question of factual impossibility. Zodhiates tacitly concedes this point. *See* Docket No. 105 at 3 ("[T]he first time it was conceivably *factually possible* for a conspiracy to be formed to violate custody rights was November 20, 2009.") (emphasis added). At the time Zodhiates allegedly

conspired to retain IMJ outside the United States, one of the conspiracy's objects—retention with the intent of obstructing a custody order—was impossible, because one of the facts necessary to make Zodhiates' alleged conduct a crime had not occurred: Judge Cohen had not transferred custody of IMJ to Jenkins.

It is well settled, however, that "the crime of conspiracy does not require that the object of the unlawful agreement be capable of fruition." *United States v. Parker*, 165 F. Supp. 2d 431, 454 (W.D.N.Y. 2001) (citing *United States v. Meyers*, 529 F.2d 1033, 1037 (7th Cir. 1976)). This is because the crime of conspiracy makes "the conspiratorial plan itself . . . the focus of the charge." *United States v. Wallach*, 935 F.2d 445, 470 (2d Cir. 1991). Thus, "the illegality of the agreement is not dependent on the actual achievement of its goal." *Id.* Rather, "[i]t is the intent of the defendants to violate the law which matters, not whether their conduct would actually violate the underlying substantive statute. The central question becomes whether the government's proof could establish that the accused planned to commit a substantive offense which, *if attainable,* would have violated a federal statute." *Id.* at 470-71 (quotation marks, brackets, and citations omitted; emphasis added).

Zodhiates responds by characterizing the Government's theory as one of legal impossibility, rather than factual impossibility. Docket 94-1 at 6. Put differently, Zodhiates argues that, because he could not have committed the substantive offense of international parental kidnapping with the intent of obstructing a not-yet-existing court order (*see Zodhiates*, 2016 WL 4771007 at *1-5), he could not have conspired to do so. *See* Docket No. 94-1 at 6 ("Because a defendant cannot conspire to obstruct parental rights that do not exist, to prove a criminal conspiracy beyond a reasonable doubt, the

Government must prove a conspiracy to obstruct existing parental rights—that is, a conspiracy to obstruct rights created by an order in place at the time the conspiracy was allegedly formed.")  But the fact that a particular event—here, a transfer of custody to Jenkins—had not occurred at the time the conspiracy allegedly began does not mean that, if that event did occur, the conspirators' conduct would not become illegal.  Indeed, Zodhiates points to nothing suggesting that two individuals cannot conspire to engage in conduct which only becomes illegal partway through the life of the conspiracy.  Rather, the limited case law on this issue is to the contrary.  *See Christianson v. United States*, 226 F.2d 646, 655 (8th Cir. 1955) (rejecting the argument that a conspiracy charge was invalid where the indictment alleged a conspiracy beginning before the object of the conspiracy became illegal, noting that "the indictment charged a continuing conspiracy").  *Cf. United States v. Russo*, 442 F.2d 498, 501 (2d Cir. 1971) ("Evidence relating to the period antedating the effective date of the statute was admissible in that it showed the intent and purpose of the conspirators' later acts.")

In contrast is the case Zodhiates relies on, *United States v. Ali*, 561 F. Supp. 2d 265 (E.D.N.Y. 2008).  In *Ali*, the defendants were charged with, among other things, failing to report the exportation of "more than $10,000 in defined monetary instruments," as well as conspiring to do so.  *Id.* at 266.  The court had previously ruled that several of the monetary instruments on which the Government based its case were not, in fact, monetary instruments covered by the statute at issue.  *Id.*  Thus, even though the defendants thought those instruments *were* reportable, they were not, and no change in the facts could alter that conclusion.  In other words, the object of the defendants' agreement was not, and could never become, illegal.  It followed, then, that the

4

defendants could not conspire to fail to report the exportation of monetary instruments that could never become reportable. Here, by contrast, the conspirators' alleged conduct might not be illegal at one point in time, but it could later become illegal if the facts changed—if, in this case, Jenkins received lawful custody of IMJ.

Zodhiates makes two final arguments. First, he argues that the Government's allegation that the conspiracy had two objects—removal and retention, both with the intent of obstructing parental rights—"gives rise to a duplicity concern." Docket No. 105 at 3. "An indictment is duplicitous if it joins two or more distinct crimes in a single count." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). The Second Circuit, however, has "approved the use" of a conspiracy charge under 18 U.S.C. § 371 that "charges a conspiracy with two objectives." *United States v. Ballistrea*, 101 F.3d 827, 835 (2d Cir. 1996). Thus, "[i]n this Circuit, it is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects." *Aracri*, 968 F.2d at 1518 (quotation marks and brackets omitted). The superseding indictment's conspiracy count does not, therefore, raise duplicity concerns.

Second, Zodhiates argues that, if the Government is allowed to proceed on its "theory of a bifurcated conspiracy, some of the government's proposed evidence is irrelevant and inadmissible." Docket No. 105 at 4. Specifically, Zodhiates argues that, under the Government's theory of the conspiracy charge, the Government should be precluded from offering evidence that "a man named John Collmus traveled from the United States to Nicaragua with items belonging to Lisa Miller on November 15, 2009." *Id.* at 4. This is so, Zodhiates argues, because "as of November 15, 2009, Lisa Miller

5

had custody and no visitation was ordered to take place."[2]  *Id.*  Thus, "the delivery of items on November 15, 2009 to Nicaragua could not relate to the obstruction of existing parental rights." *Id.*  As noted, however, the Government alleges that one of the alleged conspiracy's objects was to retain IMJ outside the United States with the intent of obstructing parental rights.  Thus, based on the Court's current understanding of the facts, evidence of efforts to retain IMJ outside the United States after she was allegedly removed would be relevant to the retention issue and, therefore, admissible under Federal Rule of Evidence 401.  And because, as discussed above, the Government may argue that efforts were made to retain IMJ outside the United States in anticipation of custody being transferred to Jenkins, it is irrelevant that, as Zodhiates argues, such evidence "could not relate to the obstruction of existing parental rights."

## CONCLUSION

The Government may argue to the jury that Zodhiates conspired to retain IMJ outside the United States with the intent of obstructing an anticipated, but not-yet-existing, custody order.  As the Court previously ruled, however, as to Count 2 of the superseding indictment—the substantive international parental kidnapping count—the Government may argue only that Zodhiates intended to obstruct parental rights in force at the time of IMJ's removal—that is, Jenkins' visitation rights.  The Court will, in due course, propose to the parties a jury instruction on the conspiracy charge which accounts for the alleged conspiracy's multiple objects.

---

[2]  The Court offers no opinion on whether Zodhiates' assertion regarding the state of parental rights on November 15, 2009 is correct.

**SO ORDERED.**

Dated: September 19, 2016                      *s/Richard J. Arcara*
       Buffalo, New York              HONORABLE RICHARD J. ARCARA
                                            UNITED STATES DISTRICT JUDGE