**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.                                        14-CR-175-RJA
                                              **DECISION AND ORDER**

PHILIP ZODHIATES,

                Defendant.
_____

      This case is before the Court on Defendant Philip Zodhiates's motion for bail pending appeal, pursuant to 18 U.S.C. § 3143(b). For the reasons stated below, the motion is granted.

## DISCUSSION

      After a jury trial, Zodhiates was convicted of conspiracy, in violation of 18 U.S.C. § 371; and international parental kidnapping, in violation of 18 U.S.C. §§ 1204 and 2. On March 22, 2017, the Court sentenced Zodhiates principally to concurrent sentences of 36 months' imprisonment on each count. After sentencing, the Court heard argument on, and then granted, Zodhiates's bail motion, noting that it would file a written Decision and Order stating its reasons for doing so.

      **1. Section 3143(b)'s standard for bail pending appeal**

      A defendant who has been sentenced to a term of imprisonment and who files an appeal "shall . . . be detained," 18 U.S.C. § 3143(b), unless he makes two showings. First, a defendant seeking bail pending appeal must show "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released." *Id.* § 3143(b)(1)(A). And second, the defendant must show that "the appeal is not for the purpose of delay and raises a substantial question of

1

law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.* § 3143(b)(1)(B).

As its text makes clear, § 3143(b)'s second prong requires the Court to answer two separate and distinct questions. The Court must first identify a "substantial question." Section 3143(b)'s "substantial question" requirement does not make "bail dependent upon the willingness of a trial court to certify that it is likely to be reversed." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (quotation marks omitted). Instead, a "substantial question" under § 3143(b) is "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* at 125 (quotation marks omitted). Put differently, a "substantial question" is a question "of more substance than would be necessary to a finding that it was not frivolous. It is a close question or one that very well could be decided the other way." *Id.* (quotation marks omitted).

If a defendant identifies a "substantial question," the Court "must then consider whether that question is so integral to the merits of the conviction on which [the] defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (quotation marks omitted). In other words, the Court must ask whether the "substantial question" will "likely . . . result in" reversal, a new trial, a non-incarcerative sentence, or a sentence that is less than the sum of the defendant's current time served and the expected duration of his appeal. 18 U.S.C. § 3143(b)(1)(B).

The Court considers each prong of § 3143(b) in turn.

**1. Zodhiates's risk of flight and danger to the community**

As an initial matter, there is absolutely no question that, with or without conditions, Zodhiates is not a danger to any other person or to the community.

The more difficult question is Zodhiates's flight risk.  In opposition to Zodhiates's motion, the Government notes that Zodhiates owns a home in Nicaragua; it points to his significant resources; and it observes that he has friends and acquaintances in multiple countries.  The Court shares these concerns to some degree, but the Court believes that they do not give rise to a serious risk of flight.  Zodhiates's foreign connections appear to largely, if not entirely, result from his extensive charitable work.  This lessens the Court's concern that Zodhiates's foreign connections might help him flee.  And, moreover, Zodhiates has surrendered his passport to the Clerk of the Court, making it much more difficult (though, of course, not impossible) for him to flee the country.

More fundamentally, though, the Court does not believe, based on its experience with Zodhiates for the past six months—and, in particular, based on an understanding of Zodhiates gained through the sentencing process—that he will flee.  Zodhiates has been fully compliant with the terms of his release.  More importantly, he has very close ties to his family, to his community, and to his business, making the risk of flight, in the Court's view, low.  Nonetheless, the Court cannot ignore the fact that it has imposed a substantial term of imprisonment, which increases Zodhiates's incentive to flee.  As stated on the record on March 22, 2017, the Court will therefore require that both Zodhiates and his wife secure a bond for the value of their residential property in Waynesboro, Virginia, subject to the terms set forth in the conclusion of this Decision

and Order. The risk of losing his home is sufficient to satisfy the Court, by clear and convincing evidence, that Zodhiates will not flee before this case is resolved.

**2. Zodhiates's anticipated appellate arguments**

Zodhiates identifies four possible appellate issues that, he argues, satisfy § 3143(b)'s "substantial question" requirement.

**a. The Court's jury instructions**

Zodhiates first moves for bail based on his anticipated appellate argument that the Court improperly instructed the jury on the meaning of the term "parental rights" in the International Parental Kidnapping Crime Act (IPKCA), 18 U.S.C. § 1204. Specifically, Zodhiates renews his argument that "[p]arental rights for purposes of 18 U.S.C. § 1204 are defined by the law of the state within the United States in which the child was habitually resident immediately before the removal or retention." Docket No. 168 at 3 (citing *United States v. Amer*, 110 F.3d 873, 878 (2d Cir. 1997)). The Court rejected this argument after carefully considering it both at the end of trial and in the Court's Decision and Order resolving Zodhiates's post-trial motions. *See* Docket No. 164 at 20-27.

Zodhiates argues that he has satisfied his burden of identifying a "substantial question" because, he asserts, "prior to the Court's decision and order denying the posttrial motions . . ., 'every court that has opined on the issue' has concluded that parental rights are defined by the law of the state of habitual residence of the child immediately before the challenged actions." Docket No. 168 at 4 (quoting *United States v. Homaune*, 898 F. Supp. 2d 153, 160-61 (D.D.C. 2012). This appears to be correct. To be sure, that does not mean that the Court's holding was wrong; as the Court noted

in its post-trial Decision and Order, "[i]n each of the cases" on which Zodhiates relied in his post-trial briefing, "there was no way to define 'parental rights' *other* than by looking to the operation of state law." Docket No. 164 at 23 (emphasis in original). "[I]n other words," in each of the IPKCA decisions on which Zodhiates relies, "there was [not] a 'court order'" governing parental rights, as there was in this case. *Id.* (quoting 18 U.S.C. § 1204(b)(2)(B)). Nonetheless, Zodhiates's claim is novel in at least one sense: there does not appear to be a reported decision addressing an IPKCA kidnapping that was undertaken with the intent of violating a *court order*, rather than rights that arise by the operation of state family law.

Of course, the fact that this question is "novel" does not necessarily make it a "close question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (quotation marks omitted). A question can be both novel and simple to resolve. The Court believes that the issue Zodhiates has raised is both. This conclusion is based not on the Second Circuit's decision in *United States v. Amer*, but based instead on a straightforward reading of the IPKCA's very simple text. The statute, as noted, provides that "parental rights" can arise by court order. That is the way in which parental rights arose in this case, and that is why the Court rejected Zodhiates's reliance on *Amer*.

The Court acknowledges, however that its reading of the IPKCA is inconsistent with at least a superficial reading of *Amer*. Thus, while it is a very close question, the Court believes that Zodhiates has identified a novel question that is not controlled by any precedent. He has, therefore, identified a "substantial question," as the Second Circuit has defined that term.

Finally, given that Zodhiates's intent was the central issue at trial, and given that the intent at issue in this case is an intent to obstruct another person's "parental rights," the Court believes that, if the Second Circuit agrees with Zodhiates's understanding of the term "parental rights," such a holding would "likely . . . result in" a reversal of Zodhiates's conviction or a new trial.  18 U.S.C. § 3143(b)(1)(B).

### b.  Introduction of cell phone records

Zodhiates next moves for bail pending appeal based on his anticipated appellate argument that the Government conducted an illegal Fourth Amendment "search" when it obtained his cell phone billing records by using a grand jury subpoena.  The Court rejected this argument in both pre-trial and post-trial litigation.

In support of his bail motion, Zodhiates points to a recent Second Circuit case which declined to reach the "important and complex Fourth Amendment question" raised by Zodhiates's suppression motion.  *United States v. Caraballo*, 831 F.3d 95, 102 (2d Cir. 2016), *cert denied*, 137 S. Ct. 654.  As he did in pretrial litigation, Zodhiates also relies on the concurring opinions in *United States v. Jones*, 565 U.S. 400 (2012), as well as the Second Circuit's two decisions in *ACLU v. Clapper*.  *See* 785 F.3d 787 (2d Cir. 2015) (*Clapper I*); 804 F.3d 617, 625 (2d Cir. 2015) (*Clapper II*).

Whether Zodhiates's Fourth Amendment question presents a "close question," *Randell*, 761 F.2d at 125 (quotation marks omitted), is itself a close question.  On the one hand, the records at issue in this case implicate some of the same Fourth Amendment issues addressed in a growing number of cases involving historical cell site location information (CSLI) data.  *See, e.g.*, *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016), *cert. pet. pending*; *United States v. Graham*, 824 F.3d 421 (4th Cir.

2016), *cert. pet. pending.* The Fourth Amendment questions in those cases are novel, and they have led to intense debate among courts of appeals outside the Second Circuit. On the other hand, however, historical CSLI "is not what is at issue in this case." *Zodhiates*, 166 F. Supp. 3d at 336 n.9. Rather, the information at issue in this case was found on routine cell phone bills—records of the sort that the "government routinely . . . subpoenas." *United States v. Davis*, 785 F.3d 498, 506 (11th Cir. 2015) (*en banc*), *cert. denied*, 136 S. Ct. 479. Based on this fact, and after applying well-settled Supreme Court precedent,[1] the Court concluded that the Government did not conduct a Fourth Amendment "search" when it obtained Zodhiates's cell phone billing records with a grand jury subpoena.

The Court, however, need not decide whether Zodhiates raises a "substantial" question for purposes of § 3143(b) because even if it does, the question is not likely to result in reversal or an order for a new trial. At the time the Government subpoenaed the records at issue in this case—August 2011, *see* Docket No. 72 at 18—the third-party doctrine had not been subject to the criticism that has stemmed from the Supreme Court's 2012 decision in *United States v. Jones*, 565 U.S. 400 (2012). Assuming, then, that the Government conducted an illegal Fourth Amendment "search" in this case, the Government's reliance on well-settled Supreme Court precedent in conducting that search—an argument the Government raised before this Court, *see* Docket No. 72 at 18-20—would likely result in the Second Circuit concluding that the exclusionary rule does *not* apply in this case. *See Davis v. United States*, 564 U.S. 229 (2011); *United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013). Thus, the Court believes that, even if Zodhiates's Fourth Amendment challenge to his cell phone billing records is

---

[1] *See Smith v. Maryland*, 442 U.S. 735 (1979); *United States v. Miller*, 425 U.S. 435 (1976).

"substantial," that question is not "likely to result in . . . reversal" or "an order for a new trial." 18 U.S.C. § 3143(b)(1)(B).

### c. Specific-acts character evidence

The next "substantial question" Zodhiates identifies is based on the Court's exclusion of much of Zodhiates's proposed specific-acts character evidence at trial. The Court's post-trial Decision and Order explains in detail the reasons for those evidentiary rulings. *See* Docket No. 164 at 13-19.

The Court does not believe that Zodhiates's evidentiary arguments raise a "substantial question," as the Second Circuit has defined that term. Although there is little Second Circuit case law addressing the use of specific acts character evidence to prove (or disprove) an issue such as intent—whether that evidence is called reverse Rule 404(b) evidence, Rule 405(b) evidence, or something else—what case law there is shows that the Court's decisions were not "close question[s] or one[s] that very well could be decided the other way." *Randell*, 761 F.2d at 125 (quotation marks omitted). *See United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997). In any event, even if the Second Circuit disagreed with the Court's Rule 403, 404(b), and Rule 405(b) analyses, to obtain a reversal or new trial, Zodhiates would need to show the Second Circuit not only that the Court's evidentiary rulings were wrong, but that the Court also abused its discretion in excluding Zodhiates's proposed specific-acts character evidence *and* that the Court's error was not harmless. Given these standards, an order for a new trial is unlikely.

### d. The Court's questioning and interjections

Finally, Zodhiates seeks bail pending appeal because of the Court's brief questioning of Ervin Horst, as well as the Court's two interruptions of defense counsel's summation.  Neither of these issues raises a "substantial" question, as the Second Circuit has defined that term, but even if they did, they would not "likely" result in reversal or a new trial.  18 U.S.C. § 3143(b)(1)(B).  That is, even assuming that the Court's questioning and interjections were the type of error that results in a "substantial question," that error was almost certainly harmless.

### CONCLUSION

For the reasons stated above, the Court grants Zodhiates's motion for bail pending appeal.  As a condition of Zodhiates's bail, the Court will, as noted, require Mr. and Mrs. Zodhiates to execute a bond secured by the value of their home located at 274 Shalom Road, Waynesboro, Virginia.  Within two weeks of the date of this Decision and Order, the parties shall provide the Court with such information as is required to complete Administrative Office Form 98 (Appearance Bond),[2] which sets forth the conditions the Court will impose for the bond.

In addition to the bond condition set forth above, the Court continues Zodhiates on the conditions of release set by Magistrate Judge McCarthy's October 8, 2014 Order Setting Conditions of Release (Docket No. 5), the terms of which the Court hereby incorporates into this Decision and Order.

---

[2]  A copy of AO Form 98 is available at http://www.uscourts.gov/forms/pretrial-release-and-appearance-bond-forms/appearance-bond

**SO ORDERED.**

Dated: March 24, 2017                                         _s/Richard J. Arcara_
      Buffalo, New York                                HONORABLE RICHARD J. ARCARA
                                                          UNITED STATES DISTRICT JUDGE